Anderson, J.
The appellees, who were plaintiffs in the court below, have title in fee to the store-house and lot at the intersection of King and Fairfax streets, in the city of Alexandria, which may be described as the south-west corner lot. Their store-house covers the entire area of the lot, extending back from King’s street to its rear boundary line. The appellant owns the adjoining lot west, which is of the same depth, each extending back seventy feet; but the store-house upon the appellant’s lot did not extend back from King’s street the whole depth of the lot, so that there was an open space in the rear of his store-house of twelve by twenty feet, which was unoccupied, except by a privy. Both lots were formerly owned by Joseph Smith, and were as thus described, when by his will hearing date January 1st, 1845, he devised them as follows: the corner house and lot, together with the east side or half of the privy, situate on the adjoining lot west to his son William, in trust for his son Sidney; *894 and by a codicil to Ms will, the said adjoining lot to his son William, who afterwards, in the year 1848, sold conveyed the same to the appellant subject to the rights of the owner of the corner lot. to the east side or half of the privy. By the death of Sidney Smith, the appellees, who are his heirs at law, became invested with title to the corner lot by descent. The appellant, in the lifetime of Joseph Smith, held possession of the corner store-house and lot, and continued possession thereof as tenant to Sidney Smith; and after his death he continued to hold possession thereof as tenant to his heirs, the appellees, or their guardian, they being infants. And during his tenancy, and the infancy of the appellees, he removed the privy, blocked up the door on the west side of their store-house, which opened on the space in the rear of his store-house, and through which they had access to the privy, and which afforded light and air to their store-house, and extended the first story of his storehouse to the rear line of his lot, so as to cover the entire space, which he covered with a flat roof, upon which he erected another privy, which could be approached from the second story of both store-houses, over the roof of his store extension. To give access to the privy, to the tenant of the corner store-house, though it is not alleged or directly proved, it would seem that he must necessarily have to cut a door through the wall of the appellee’s store-house from the •second story through which to enter upon the flat roof, as there does not appear from the diagram exhibited with the record, or by any evidence in the •cause, that there was a door or any opening there before.
The plaintiffs allege in their bill, that they were wholly ignorant of the changes which the appellant *895 bad made in their property, and the invasion of their rights, until the year 1866, and that on the 2nd of April of that year they instituted an action on the against him, to recover damages therefor, and obtained a verdict for one cent damages, and a judgment for costs—the court certifying that the object of this suit was to try a right, as well as to recover damages. This judgment was affirmed by the district court of appeals, upon a writ of error which was awarded to the defendant. The defendant continuing the nuisance afterwards, the plaintiffs instituted a second action of trespass on the case against him, which resulted in a verdict for one cent damages, and a judgment in their favor for costs, and damages.'
The plaintiffs claim, that their rights herein alleged to have been violated by the appellant, and the fact of their violation, have been determined by the said action at law, and cannot now be questioned. The appellant insists that they have not been determined by those actions. The court is of opinion, that the verdict of the jury being general, and responsive to the issue upon all the counts, is a finding in favor of the plaintiffs on all of them, which is confirmed by the judgment of the court, and establishes the plaintiff’s right to the east half of the privy, to the door in the west side of their store-house, and the right of egress and ingress through it, to and from the east side of the privy, over the appellant’s yard, and to the communication of light and air through it to their store-room, which rights have been violated by the appellant, by his acts and doings aforesaid.
But if the appellee’s rights were not clearly established by the judgments at law, they are clearly set out and proved in this chancery suit; and the court is of opinion that the appellees, their right being clear, *896 might have pursued their remedy in a court of equity with.out first resorting to a court of law to establish right. (2 Eden on Injunctions, p. 273; Law of Nuisance, Wood, § 777, and cases cited.)
It might be conceded, that the extension by the appellant of his store-house over the open space in- the-rear of it and raising the privy to a level with the-second story of the appellees’ store-house, would not be a substantial violation of the appellees’ right to the-east half of the privy, provided he had made the-change, and given the appellees a commodious and convenient access to it, from their second story, without violating any other of their rights.
But this he has not done, and could not do. What' right had the appellant to block up the appellees’' door-way in their own building, and thereby exclude light and air from their store-room ? What right had he to deprive them of egress and ingress through their door, as they had enjoyed it before he purchased his lot? What right had he to cut a door through the-wall of their house, as he probably did, to give access-from the second story to the flat roof of his store extension, without their consent?
Thus it appears that whilst the raising of the privy to a higher level by the appellant may not have been in itself a substantial violation of the plaintiffs’ right,, provided he gave them as convenient a way of access-to it over the roof of - the extension of his store-house from the second story of their store-house, the execution of the change involved him necessarily in the-violation of other important unquestionable rights of the plaintiffs, which seems to be essential to the comfortable enjoyment of their property.
The appellant purchased his store-house and lot when subject to those rights of the plaintiffs, which *897 must have diminished the value of the property he purchased, and consequently the price he had to pay for it. By the improvements he has made to his house he has added to its value. He has increased the annual rental of it, according to the proof in the cause, from $50 the first year to $100 or $150 subsequently. But he has done so at the expense of the plaintiffs, by a reduction of the annual rental value of their property, according to the proofs, from $50 to $75, and to their permanent damage of five or six hundred dollars. And those changes he made in violation of their manifest rights and without their consent, and whilst he was in possession of their property as tenant thereof, and they were in their minority and incapable of protecting their rights. He says they were made with the knowledge and approbation of their guardian. If that were proved it could not avail him, as the guardian had no authority to consent to such impairment of the value of his ward’s property. The appellant had no right to enhance the value of his property by invading the rights of the plaintiffs, and detracting from the value of their property, as the record clearly shows he has done. He may have done it with no wilful design to injure the plaintiffs, or to trample on their rights, and without considering that he was doing them a wrong and injury, as is very probable; but, nevertheless, he has invaded their substantial rights, and done them serious permanent damage.
And now as to the remedy. Mr. Justice Story says, when a party builds so near the house of another as to darken his windows against the clear rights of the latter, either by contract or ancient possession (in this case the appellant did not build so near as to merely darken the plaintiffs’ windows, but actually blocked up the door in which were lights in the plaintiffs’ house, *898 so as entirely to exclude the light and air), in such case the eminent jurist says courts of equity will interfere injunction to prevent the nuisance, as well as to reme¿y a if already done, although an action for damages would lie at law, for the latter can in no just sense be deemed an adequate relief in such case. The injury is material, and operates daily to destroy or diminish the comfort and use of the neighboring house, and the remedy by multiplicity of actions, for the continuance of it, would furnish no substantial compensation. 2 Stor. Eq. Jur., § 926.
Where ancient lights have existed for upward of twenty years undisturbed, the owner of an adjoining lot has no right to obstruct them, and, particularly so, if the adjoining lot was owned by the person who built the house containing the ancient lights at the time of building, and was subsequently sold by him. Eden on Injunctions, p. 269, note 1, citing Robeson v. Piitenger, 1 Green’s Ch. R. 57.
Injunction will be awarded in such cases where the windows are ancient lights, or where the act is in violation of some agreement express or implied. (2 Eden on Injunctions, p. 269, note (1), and cases cited).
The court is well satisfied that in this case the remedy at law is wholly inadequate for the purposes of justice. They cannot but regard the injury to the appellees as of a serious character. But they are not satisfied, from all that is shown by the record, that ample pecuniary compensation might not be made to the appellees for the invasion of their rights, and the impairment to the value of their property. And as a mandatory. injunction would subject the Other party to serious inconvenience, it would seem to be proper for a court of chancery to direct an inquiry before itself, whether the injury is capable of being *899 fully and abundantly compensated by a pecuniary sum, and what sum would be reasonably adequate.
In Kerr on Injunctions (page 281), it is said, “ the •court will not interfere by way of mandatory injunction without taking into consideration the comparative convenience and inconvenience which the granting or withholding the injunction would cause to the parties. If the injury done is capable of being fully and abundantly compensated by a pecuniary sum, while the inconvenience to the other party from granting an injunction would be serious, the court will not interpose by mandatory injunction; but will either direct an inquiry before itself, in order to ascertain the measure of damages that has been actually sustained, or will, -on dismissing the bill, reserve to the plaintiff his right to proceed at law.” An action at law could not afford an adequate remedy for the permanent and continuing injury. "Whilst in the proceeding in equity, he may be awarded compensation, not only for past injuries, but also for the permanent and continued anticipated injury caused by the appellant’s acts of aggression upon their rights, already accomplished, and thus avoid a multiplicity of suits at law to recover damages from time to time, for the continuing injury, after the damage has been actually sustained; the pecuniary compensation to be awarded in lieu of all damages actually incurred, or which may hereafter be incurred, by the appellee, from the acts and doings of the appellant -complained of, and the appellees perpetually enjoined from the prosecution of other suits or actions against .the appellant therefor. In a recent case of Isenberg v. The East India House Estate Co., decided in England, (The Jurist, 1864, part 1, page 221), the lord chancellor suspended the order of the master of the rolls, awarding a mandatory injunction, and directed an in *900 quiry before Mm for the purpose of ascertaining what damage had been sustained by the plaintiff, by reason the buildings erected by the defendants, and what wouid be the proper amount of compensation to be paid by the defendants to the plaintiff as satisfaction for such damages. The court, approving of the decision of the lord chancellor, are of opinion that it may be safely followed as a precedent. They are of opinion, therefore, to reverse the decree of the circuit court, and suspend the mandatory injunction, and to. remand the cause for the purpose of directing the inquiries before indicated, and then to be proceeded with to a final hearing and decree, as may be right and proper on the case as it may be then presented. But the appellees being the parties substantially prevailing here, are entitled to their costs.